**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| TONYA HALL, | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| v. | | **Case No.: PWG-13-937** |
| | * | |
| WASHINGTON METROPOLITAN | | |
| AREA TRANSIT AUTHORITY, | * | |
| | | |
| **Defendant.** | * | |
| | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tonya Hall sustained an injury while attempting to exit a bus that Defendant Washington Metropolitan Area Transit Authority ("WMATA") operated, and then sued Defendant for negligence in Maryland state court. Compl. ¶ 4, ECF No. 2. Defendant removed the case to this Court, ECF No. 1, and now moves for summary judgment on the grounds that video evidence negates Plaintiff's allegations of negligence.[1] Because the video indisputably contradicts Plaintiff's allegations, I will grant Defendant's motion.

**I.    BACKGROUND**

Hall alleges that, on the day in question, "she was exiting the front door of the bus when the operator of the bus suddenly shut the door on her before she could completely get off causing her to fall onto the ground." Compl. ¶ 4. In support, she provides her deposition, in which she

---

[1] Defendant submitted a Motion for Summary Judgment along with a Memorandum in Support, ECF No. 21. Plaintiff filed an Opposition, ECF No. 22, and Defendant filed a Reply, ECF No. 23. A hearing is not necessary. *See* Loc. R. 105.6. For the reasons stated herein, WMATA's motion for summary judgment is granted, and the Clerk is directed to close this case. This Memorandum Opinion and Order disposes of ECF No. 21.

testified: "I was standing at the front of the bus . . . and I was on my way . . . to step off the bus. That's when the doors shut and that's when I fell.  It was like the doors shut as I was . . . getting off the bus."   Hall Dep. 21:19–22:2, Pl.'s Opp'n Ex. 1, ECF No. 22-1.   Although she later testified that she did not "know how [she] fell," she consistently stated that the bus driver "shut the doors and [she] was trying to get off the bus. [She] was going through the doors when the doors shut and [she] fell." Hall Dep. 23:17–20, Def.'s Mem. Ex. 1; *see also id.* at 23:1–4 ("When he stopped, the people got on the bus.  I was . . . going to just step down to get off the bus and that's when I fell.").[2]   Similarly, in her Answers to Interrogatories, Plaintiff stated that she "proceeded to walk to exiting [sic] the bus and as she began to step down, the driver shut the door causing the door to push the plaintiff causing her to fall." Answers to Interrogs. No. 4, Def.'s Mem. Ex. 3. She added that "the defendant was negligent in shutting the door on the Plaintiff before she was able to get off." *Id.* No. 6.

WMATA argues that Hall fell because she tripped, and that her fall was not caused by the bus doors closing.  Def.'s Mem. 5.  WMATA attached "video evidence of the incident retrieved from the bus DVR system," Def.'s Mem. Ex. 5, along with an affidavit from the manager of WMATA's Driver Management Investigations, Gerald Collins, that "the video provided to counsel for WMATA are exact reproductions" and that "[t]he video evidence has not been altered, amended or otherwise modified in any way from its original form." Collins Aff. ¶¶ 7 & 8, Def.'s Mem. Ex. 4.  Defendant claims that the video "plainly shows that the Plaintiff caught her right foot and tripped and fell off the bus."  Def's Mem. 4.  On that basis, WMATA contends that the Court should grant its motion because the video evidence "is contrary to [Hall's]

---

[2] Defendant's Exhibits 1–4 appear as ECF No. 21-1.  Defendant's Exhibit 5 is in the case file in my chambers.

assertion that she fell because the bus doors closed on her," such that "the video evidence plainly contradicts the Plaintiff's allegations of negligence against WMATA." *Id.* at 4–5.

## II.    STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).   If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.   *See Celotex v. Catrett*, 477 U.S. 317 (1986).   The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).   Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

In reviewing the evidence related to a motion for summary judgment, the Court considers undisputed facts, as well as the disputed facts viewed in the light most favorable to the non-moving party.   *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).   Nonetheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).   Thus, when the record contains video footage that is

not open to more than one interpretation and contradicts the non-movant's assertions, the Court "view[s] the facts in the light depicted by the videotape." *Id.* at 381. This means that when a videotape "clearly depict the events at issue, they will prevail over contrary evidence submitted by either side." *Glascoe v. Sowers*, No. ELH–11–2228, 2013 WL 5330503, at *5 (D. Md. Sept. 20, 2013). But, if "the videos are unclear and ambiguous, the Court must adopt [the non-movant's] version of events for purposes of the Motion [for Summary Judgment]." *Id.*

## III.    DISCUSSION

*Scott*, 550 U.S. 372, is informative. There, Harris sued Deputy Scott, a police officer, for rear-ending his vehicle at the end of a high-speed car chase. *Id.* at 374–75. On an interlocutory appeal of the district court's denial of the officer's summary judgment motion on grounds of qualified immunity, the Eleventh Circuit affirmed, and Deputy Scott appealed again. *Id.* at 376. The Supreme Court considered whether, "'[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 377. The Court observed that the district court had denied summary judgment upon "finding that 'there are material issues of fact,'" and that the Eleventh Circuit took Harris's "view of the facts as given."[3] *Id.* at 376.

---

[3] In dissent, Justice Stevens noted that the Eleventh Circuit judges "apparently did view the videotapes entered into evidence" and reached the opposite conclusion." *Scott*, 550 U.S. at 395 (Stevens, J., dissenting). According to Justice Stevens, the majority should not have relied solely on their own opinion of the video footage, which differed from the appellate judges' opinion, because "[i]f two groups of judges can disagree so vehemently about the nature of the pursuit and the circumstances surrounding that pursuit, it seems eminently likely that a reasonable juror could disagree with this Court's characterization of events." As I read *Scott*, the majority does not hold that video footage should provide the facts under all circumstances, but rather that a trial court should rely on video evidence, rather than the non-moving party's statements, when the video evidence "*quite clearly* contradicts the version of the story told by [the non-moving party]." *Id.* at 378 (emphasis added); *see Glascoe*, 2013 WL 5330503, at *4 (stating that a court cannot "'reject a plaintiff's account on summary judgment' if the 'documentary evidence, such as a video,' merely 'offers *some* support for a governmental officer's version of events.'"

The Supreme Court stated that "existence in the record of a videotape capturing the events in question" created "an added wrinkle in th[e] case," as "[t]he videotape quite clearly contradict[ed] the version of the story told by [Harris] and adopted by the Court of Appeals." *Id*. at 378.  The Court observed that "[t]here [we]re no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depict[ed] differ[ed] from what actually happened." *Id.* at 378.  Based on the video footage, the Court concluded that the officer did not violate Harris's constitutional rights.  *Id.* at 380–81.  It reasoned that it was proper to rely on the videotape rather than Harris's "utterly discredited" allegations because, given the clarity that the video provided, the facts could not be disputed, and only the facts for which "there is a 'genuine' dispute" are "viewed in the light most favorable to the nonmoving party." *Id.* at 380.

As in *Scott*, the evidence presently before the Court includes a video of the incident at issue.  Plaintiff does not challenge the authenticity or accuracy of the video, *id.* at 378, and I accept this as evidence of what occurred.  Therefore, I must consider whether the video evidence clearly controverts either party's arguments.  *See id.* at 380.

The video clearly depicts Hall standing at the front of the bus, waiting to exit while other passengers board the bus.  While attempting to exit the bus, Hall begins falling prior to reaching the doors, which already were closing.  Her hands stop the doors from closing as she falls through them.  It is evident that the doors began to close before Hall entered the doorway.  They did not close on Hall or immediately behind her as she was standing in the doorway.  Nor did they cause her to fall.  It is true that it is not clear from the video whether Plaintiff tripped.  *See* Pl.'s Opp'n 3–4.  But whether Plaintiff tripped is not a material fact: Plaintiff bases her

---

(quoting *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (emphasis in *Witt*))).

negligence claim on the allegation that Defendant shut its doors on her, causing her to fall.  *See* Compl. ¶ 4.  Thus, the material fact is whether the bus doors shut on Plaintiff and caused her to fall.

With the video evidence in the record, it is beyond cavil that Plaintiff's falling through the doorway was not caused by the doors closing on her, as she claims.  Unlike in *Scott*, where in the dissent's view, the video could have supported either party's presentation of the facts, the video footage before me clearly shows that the doors did not shut on Plaintiff or cause her to fall.  Indeed, in her Opposition, Plaintiff contends that "[t]he video appears to show the Plaintiff reaching out of reflex, believing that the door was going to shut on her and as the door opened back up, she fell."  Pl.'s Opp'n 3.  For the doors to "push" her, Answers to Interrogs. No. 4, and "caus[e] her to fall onto the ground," as Plaintiff alleges, they would have had to have been behind her, and if they were behind her, Plaintiff could not have "reach[ed] out" to stop them, as she argues in her Opposition.  Therefore, the video plainly contradicts Plaintiff's version of the facts, and I must disregard Plaintiff's contrary allegations.  *See Scott*, 550 U.S. at 380; *see also Henderson v. Simpkins*, No. CCB–13–1421, 2014 WL 3698878, at *8 (D. Md. July 24, 2014) (relying on video evidence that negated plaintiff's allegations of excessive force); *Glascoe*, 2013 WL 5330503, at *4–5 (relying on video evidence rather than non-movant's version of events "to the extent that the videos clearly depict[ed] the events at issue" and contradicted non-movant's assertions).

Hall's argument that this is a dispute of material fact for a jury to decide, Pl.'s Opp'n 3, is without merit.  To begin, Plaintiff identifies whether she tripped as the disputed material fact and, as discussed, this fact is not material.  Moreover, as the Supreme Court explained in *Scott*, when video evidence, the authenticity and accuracy of which is not challenged, clearly discredits

one party's portrayal of the facts, a jury is not needed to decide the matter.  *See Scott*, 550 U.S. at 380–81.  Simply put, even though a jury may not find that Plaintiff tripped, no reasonable jury would believe Plaintiff's version of the facts when the jurors could see the event for themselves on video.  *See id.*

Consequently, Plaintiff has not identified a breach of duty or a causal relationship between her injury and WMATA's actions.  *See Schultz v. Bank of America*, 990 A.2d 1078, 1086 (2010) ("In a negligence claim, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her], a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" (quoting *Jacques v. First Nat'l Bank,* 515 A.2d 756, 758 (1986))).  Thus, her negligence claim fails. *See id.* Because there is no dispute of material facts, Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV.    CONCLUSION

In sum, WMATA's Motion for Summary Judgment, ECF No. 21, IS GRANTED. The Clerk IS DIRECTED to CLOSE THIS CASE.


Dated: <u>July 30, 2014</u>                                       <u>          /S/          </u>
                                                                            Paul W. Grimm
                                                                            United States District Judge
jml